UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BLUE HILL SPECIALTY INSURANCE COMPANY, INC.     PLAINTIFF

V.     CIVIL ACTION NO. 3:22-CV-713-KHJ-MTP

MARION GRINSTON, et al.     DEFENDANTS

ORDER

Before the Court are Cross-Claimant Delta Industries, Inc.'s and Cross-Defendant Signature Insurance Agency, LLC's [146] and [148] Motions for Summary Judgment. The Court denies both motions.

I.    Background

This case arises from an insurance dispute in a state-court wrongful-death lawsuit. *See* Order [172] at 1–3.

Delta is in the concrete business. Delta First Dep. [146-1] at 3. It entered into an Independent Contractor Agreement with Grinston Trucking Company. *See* [146-4]. The Independent Contractor Agreement provided that Grinston Trucking

> shall . . . maintain[] liability insurance . . . in at least the minimum amount as set and provided by law, but in no event less than $2,000,000 combined single limit for any one accident, and shall carry DELTA as additional insured in said insurance policy.

*Id.* at 2.

Grinston Trucking's insurance agent, Signature, sent ten certificates of insurance to Delta from 2017 to 2021. *See* Certificates [152-8] at 3–16; Richardson Dep. [152-1] at 16. Each certificate represented that Grinston Trucking did, in fact,

have $2 million in combined-single-limit coverage. *See id.* Only one of the certificates marked Delta as an additional insured. *See* [152-8] at 3–16.

In May 2021, Grinston Trucking's insured vehicle was involved in a tragic accident. *See* State Court Am. Compl. [156-12]. The accident led to a state-court wrongful-death lawsuit in which the surviving spouse brought claims against both Grinston Trucking and Delta. *See id.* During that state-court lawsuit, an insurance dispute emerged. Although the certificates represented that Grinston Trucking had $2 million in insurance, Grinston Trucking's policy with Blue Hill Specialty Insurance Company provided for only $750,000 in coverage. *See* [172] at 2–3.

Blue Hill initiated a declaratory-judgment action against various Defendants with a direct or derivative interest in the coverage dispute. *Id.* at 3. Delta filed crossclaims against Signature for negligent and fraudulent misrepresentation. *See* Delta's Crossclaims [55]; Signature's Answer to Crossclaims [58]. After discovery, the Court granted Blue Hill's motion for summary judgment, confirming (as all now agree) that the policy provided only $750,000 in combined-single-limit coverage. *See* [172].

Delta and Signature filed cross-motions for summary judgment. [146]; [148]. The parties agree that Signature issued numerous certificates that misrepresented the amount of Grinston Trucking's coverage. Signature's Resp. [156] at 3. But they dispute whether those misrepresentations amount to negligent or fraudulent misrepresentation under Mississippi law. *See* [146]; [148]. The Court now takes up the competing motions for summary judgment.

II.     Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' while a dispute about that fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (citation omitted). "A movant is entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Carnegie Techs., LLC v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (cleaned up).

The Court views all facts and evidence in the light most favorable to the nonmoving party. *United Fire & Cas. Co. v. Hixson Brothers Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). The Court must "refrain from making credibility determinations or weighing the evidence." *Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 418 (5th Cir. 2008) (quotation omitted).

Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 781 (5th Cir. 2024) (quotation omitted).

III.  Analysis

The Court first reassures itself of its jurisdiction. It then takes up (and denies) the parties' competing motions for summary judgment on negligent misrepresentation. After that, it addresses (and denies) the parties' competing motions for summary judgment on fraudulent misrepresentation. Finally, it turns to (and denies) Delta's motion for summary judgment on punitive damages.

A.  Subject Matter Jurisdiction

"Jurisdiction is always first." *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (quotation omitted). The Court "must consider jurisdiction *sua sponte* even when neither party has raised the issue." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293 (5th Cir. 2019). So the Court reassures itself that it has jurisdiction over Delta's crossclaims.

The Court exercised diversity jurisdiction over Blue Hill's declaratory-judgment claim. *See* Compl. [1] ¶¶ 1–11; *Frye*, 953 F.3d at 293. It has exercised supplemental jurisdiction over Delta's state-law crossclaims against Signature, a non-diverse party. *See* 28 U.S.C. § 1367(a); [55] ¶¶ 1–4; [58] ¶¶ 1–4. The Court recently resolved Blue Hill's declaratory-judgment claim. *See* [172].

Even so, the Court exercises its discretion to retain jurisdiction over Delta's crossclaims. *See* 28 U.S.C. § 1367(c). The state-law claims are neither novel nor complex. *See Wilson v. Tregre*, 787 F.3d 322, 326 (5th Cir. 2015). Those claims have been pending for more than a year, discovery has closed, and the case is set for trial in just over a month. *See id.* At this point, it would be a "waste of judicial resources

4

to decline to exercise supplemental jurisdiction." *Id.* So the Court proceeds to the merits.

    B. Negligent Misrepresentation

Signature and Delta both move for summary judgment on negligent misrepresentation. Under Mississippi law, negligent misrepresentation has five elements:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 743 (Miss. 2019) (quotation omitted). The parties agree that Delta has established the first three elements. *See* Signature's Mem. [149] at 22–26; [156] at 7–8. They disagree about the last two: reasonable reliance and proximate causation. *See id.*

Both disputed elements present jury questions, so neither party is entitled to summary judgment. The Court first addresses Signature's motion, then Delta's.

    1. Signature's Motion

Genuine issues of material fact as to both disputed elements—reasonable reliance and proximate causation—preclude summary judgment for Signature.

Reasonable Reliance

The first disputed element is whether Delta "reasonably relied upon the misrepresentation[s]." *Gulf Coast Hospice LLC*, 273 So. 3d at 743 (quotation omitted). Signature argues that summary judgment is proper because (1) Delta

5

never actually relied on the certificates and (2) even if Delta did, reliance on the certificates alone was unreasonable. *See* [149] at 22–25; Signature's Reply [159] at 7–8. Both arguments fail.

Actual reliance is, at best for Signature, a jury question. The record is replete with evidence that Delta relied on years' worth of certificates from Signature.[1] Ignoring that evidence, Signature argues that Delta's briefing "clearly admits" that Delta "never saw the COI until *after* the incident." *See* [159] at 7–8 (citing Delta's Resp. Mem. [153] at 4). In fact, Delta's briefing says the opposite: that Delta investigated Grinston Trucking's insurance by requesting certificates of insurance from Signature, and Delta had no reason to doubt those certificates "until discovery in the wrongful-death lawsuit." [153] at 4. Signature's actual-reliance argument fails.

So the Court takes up Signature's principal argument, which challenges the *reasonableness* of Delta's reliance. [149] at 22–25. "[C]ourts have always treated the 'reasonableness' of a person's reliance as a question of fact." *Gulf Coast Beach Blvd., LLC v. Fid. Nat'l Title Ins. Co.*, No. 1:09-CV-681, 2015 WL 11004894, at *3 (S.D.

---

[1] *See, e.g.*, Delta First Dep. [152-3] at 14 (discussing Delta's "standards . . . in determining whether to engage a trucking company as [a] hauler" and stating that the trucking company "ha[s] to provide [Delta] a certificate of insurance with the required coverage"); Delta Second Dep. [152-7] at 11 (noting that Delta obtains a certificate of insurance to confirm coverage when renewing an independent contractor agreement); *id.* at 31 (stating that Delta "[a]bsolutely" "would have taken action to rectify" the situation if it knew Grinston Trucking had "less than $2 million of commercial auto coverage"); [152-8]. Meanwhile, Signature cites no record evidence that Delta *ever* allowed any hauler to have only $750,000 in coverage. *See* Delta's Reply [158] at 9; *see also* [152-7] at 11 (Delta testifying that it would "occasionally" allow $1 million for a "one-truck operator" but "never [allowed] less than one million").

6

Miss. Jan. 13, 2015) (quoting *In re Coston*, 991 F.2d 257, 260–61 (5th Cir. 1993));
*see also* [156] at 1 n.1 (same); [158] at 2 (same). "Issues that require the determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case[] cannot ordinarily be disposed of by summary judgment." *Matthews v. Ashland Chem., Inc.*, 703 F.2d 921, 925–26 (5th Cir. 1983) (quotation omitted).

Here, the reasonableness of Delta's reliance is a question for the jury. On the one hand, Signature argues that Delta failed to do its due diligence. *See* [149] at 18, 22–25. Some record evidence supports that. Indeed, each certificate that Signature sent to Delta stated:

> IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy[] must have ADDITIONAL INSURED provisions or be endorsed.

*See* [152-8] at 3–16.[2] Yet Delta never requested "a declaration of coverage or an additional insured endorsement or any other communication" confirming that it was an additional insured under the policy. *See* [152-7] at 27–28; *see also, e.g.*, [152-1] at 41 ("Delta never asked to be added as an additional insured."). Delta now emphasizes that it "is an additional insured, which no one disputes." [158] at 11 n.12. Be that as it may, the point is that Delta never took steps before the accident to confirm as much—even when numerous "COIs did not properly indicate Delta

---

[2] Signature's briefing included two citation-free screenshots of *different* disclaiming language: "If the certificate holder is an ADDITIONAL INSURED, the policy[] must be endorsed." *See* [149] at 18; [156] at 14. Signature represents that this was the language on the "Certificate . . . produced to Delta." [149] at 18. Ironically, in this misrepresentation case, "the excerpts in Signature's brief . . . do not come from any of Signature's COIs issued to Delta." [153] at 15 n.9 (citing [152-8]).

7

was an additional insured." *See id.; see also* Delta's Resp. to Req. for Admiss. [148-17] at 4. Given all of this, a reasonable jury could conclude that Delta's reliance on the certificates alone was unreasonable.

On the other hand, Delta responds—with ample record support—that it was reasonable to rely on years' worth of certificates from Signature. *See* [153] at 14–15. Delta's expert states:

> It is clearly understood within the insurance industry in Mississippi that the purpose of a COI is to provide the certificate holder with evidence of the coverages and limits provided by the listed insurance policies. It is reasonable for a certificate holder to rely on the information contained in the COI. It is not the certificate holder's responsibility to further verify the information, nor would the certificate holder be expected to do so under the insurance industry's customs, standards, and practices.

Hedges Decl. [152-4] ¶ 8. For her part, Richardson admitted that certificates of insurance are "normally relied upon as proof of coverage," "[i]ncluding the amount of coverage." [152-1] at 24. What's more, each certificate purported to "CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED." [152-8] at 3–16. Given all of this, a reasonable jury could conclude that Delta's reliance on the certificates alone was reasonable.

In short, reasonable reliance is a jury question. The Court now turns to the other disputed element: proximate causation.

### Proximate Causation

The second disputed element is whether Delta "suffered damages as a direct and proximate result of [its] reasonable reliance." *Gulf Coast Hospice LLC*, 273 So. 3d at 743 (quotation omitted). The parties agree that Delta suffered damages. *See*

8

[159] at 8; *see also, e.g.*, [152-7] at 19 (noting that Delta had incurred about $100,000 in unreimbursed attorneys' fees). But Signature disputes proximate causation. *See* [159] at 8.

"Generally, proximate causation is a matter reserved for the jury." *Upchurch ex rel. Upchurch v. Rotenberry*, 761 So. 2d 199, 204 (Miss. 2000); *see also Hankins Lumber Co. v. Moore*, 774 So. 2d 459, 464 (Miss. Ct. App. 2000) ("When reasonable minds might differ on the matter, questions of proximate cause . . . are generally for determination [by a] jury.").

Here, proximate causation is indeed a jury question. On the one hand, Signature argues that Delta would have allowed Grinston Trucking to haul with less than $2 million in coverage. *See* [156] at 14. Some record evidence supports that. Before Signature entered the picture, Grinston Trucking hauled for Delta with only $1 million in coverage. *See, e.g.*, Hedges Suppl. Decl. [158-2] ¶ 20 ("Grinston Trucking's actual commercial auto policy amounts were: $1 million from at least as early as April 25, 2016."). Yet Delta was unable to "locate any documentation[] . . . predating 2017" for Grinston Trucking. *See* [152-7] at 11. And Delta did not explain a January 2017 certificate, reflecting Grinston Trucking's coverage limit of $1 million. *See id.* at 12. Given that evidence, a reasonable jury could conclude that Delta would have allowed Grinston Trucking to continue hauling with only $1 million in coverage. As such, a reasonable jury could conclude that Delta would have faced the same exposure to the $2 million state-court wrongful-death lawsuit. *See* Delta's Mem. [147] at 6 n.5.

On the other hand, Delta argues: "Had Delta known the true amount of Grinston [Trucking]'s coverage, it would not have engaged Grinston [Trucking] as an independent contractor and, thus, would never have been sued." *Id.* at 16. Record evidence supports that. For instance, Delta's representative stated in his deposition:

> Q. [I]f Delta had been alerted that . . . Grinston Trucking had less than $2 million of commercial auto coverage, is that something that Delta would have taken action to rectify?
> A. Absolutely.

[152-7] at 31; *see also, e.g., supra* note 1. Delta's representative added that, as far as he knew, Delta never permitted a "larger multi-truck operation" to haul with less than $2 million. [152-7] at 11. Given that evidence, a reasonable jury could conclude that Delta indeed would not have done business with Grinston Trucking—and thus would never have been sued.

Given the evidence in this record, "proximate causation is a matter reserved for the jury." *Upchurch ex rel. Upchurch*, 761 So. 2d at 204.

\*   \*   \*

Both reasonable reliance and proximate causation present jury questions. So the Court denies Signature's motion for summary judgment on negligent misrepresentation.

2. Delta's Motion

The Court also denies Delta's motion as to negligent misrepresentation. Considering the (almost identical) record evidence underlying that motion, the Court finds that reasonable reliance and proximate causation present jury

questions. *See* [146]; [156]; [158]. Neither side is entitled to summary judgment on negligent misrepresentation.

    C.  Fraudulent Misrepresentation

Signature and Delta both move for summary judgment on fraudulent misrepresentation, too. Under Mississippi law, fraudulent misrepresentation has nine elements:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Daniels v. Crocker*, 235 So. 3d 1, 14 (Miss. 2017) (quotation omitted). The parties agree that Delta has established some of those elements. *See* [149] at 1, 11–22; [156] at 15–18. They disagree about Signature's knowledge of the representation's falsity or ignorance of its truth, Signature's intent, Delta's reasonable reliance, and proximate causation. *See id.*

Each disputed element presents a jury question, so neither party is entitled to summary judgment. The Court first addresses Signature's motion, then Delta's.

    1.  Signature's Motion

Genuine issues of material fact as to each disputed element preclude summary judgment for Signature.

Knowledge of Falsity or Ignorance of Truth

The first disputed element is Signature's "knowledge of [the misrepresentation's] falsity or ignorance of its truth." *Daniels*, 235 So. 3d at 14 (quotation omitted). That dispute presents a jury question.

"Fraud is essentially a question best left to the factfinder." *Watson Lab'ys, Inc. v. State*, 241 So. 3d 573, 584 (Miss. 2018); *see also Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 642 (Miss. 1996) ("[C]ases which involve allegations of fraud or misrepresentation generally are inappropriate for disposition at a summary-judgment stage."). And for good reason: A defendant's knowledge and intent are generally not susceptible to direct proof. *See Allen*, 671 So. 2d at 643.

The record creates a jury question about Signature's knowledge of the certificates' falsity. On the one hand, Signature argues that it never knew the certificates contained an incorrect coverage limit. [149] at 12–14. Some evidence supports that. Richardson assumed that someone made a "data entry error" and Signature's system "copied over" that error. [152-1] at 16; *see also id.* at 33. And she testified that David Grinston never told her that he needed $2 million in coverage to haul for Delta. *Id.* at 20. She also testified that neither Grinston nor anyone on his behalf ever asked Signature to issue a certificate reflecting $2 million in coverage. *Id.* at 37. Carson testified similarly: that she made a mistake, did not check the policy amount information, and thus duplicated a prior error. Carson Dep. [148-16] at 7–9. A reasonable jury could credit that evidence and conclude that Signature never knew that the $2 million figure was incorrect.

On the other hand, Delta presents evidence supporting a finding that Signature knew the information was incorrect. David Grinston stated that he told Richardson about the $2 million coverage limit, so Richardson "knew Delta required two million." *See* David Grinston First Dep. [152-5] at 20; David Grinston Second Dep. [152-6] at 19.[3] And Signature declined to use the "For Agents Only" portal, which Progressive contractually required—and which would have auto-populated an accurate and indelible certificate. [152-1] at 19; *see also id.* at 5 (confirming that Signature was "not authorized to issue certificates of insurance except on forms provided by Progressive"). Instead, Signature issued unauthorized ACORD certificates, which "can be edited." *Id.* at 16. What's more, Delta's expert explained that *every* agency-management system he has seen auto-populates the coverage limit. *See* Signature's Mot. to Exclude or Limit [145] at 10 (quotation omitted).[4] Viewed in the light most favorable to Delta, that evidence would allow a jury to conclude that Signature manually changed the coverage limit from $750,000 to $2 million—not once, not twice, not three times, not four times, not five times, not six times, not seven times, not eight times, not nine times, but ten separate times. *See*

---

[3] Signature emphasizes that it never received a copy of the Independent Contractor Agreement. [159] at 7. But Signature never addresses the evidence that David Grinston told Richardson about the Independent Contractor Agreement's provision requiring $2 million. *See id.*

[4] Signature challenges only the expert's statements "relating to the Agency Matrix/Zywave system," tacitly admitting that the expert may testify about "every other agency management system [he has] worked with." *See* [145] at 10–11.

13

[152-1] at 16.[5] A reasonable jury could credit all that evidence and conclude that Signature knew the $2 million figure was incorrect.

In sum, whether Signature knew of the representation's falsity presents a jury question.[6] The Court moves on to the next disputed element: Signature's intent.

### Intent

The second disputed element is Signature's "intent that [the misrepresentation] should be acted on by the hearer and in the manner reasonably contemplated." *Daniels*, 235 So. 3d at 14 (quotation omitted). The parties agree that Signature intended to "provide [Delta] with information on the polic[y] as far as the coverages," including the "policy amount." [152-1] at 19. It is a jury question whether Signature intended to provide Delta with *incorrect* information.

"Intent is rarely susceptible to direct proof." *Watson Lab'ys*, 241 So. 3d at 585. Rather, "intent may be inferred from the surrounding circumstances." *Id.* at 586 (quotation omitted). Knowledge of falsity and intent to deceive are closely related: Where "false statements [are] knowingly and willfully made," "the intent to deceive will be implied." *See Claxton v. Fid. & Guar. Fire Corp.*, 175 So. 210, 212

---

[5] Even if the jury credited Richardson and Carson's testimony that the coverage limit did not automatically populate, the jury could consider the likelihood that Signature failed to catch its purported mistake ten times over.

[6] As such, the Court need not address Delta's "ignorance of the truth" argument under *In re Mercer. See* [153] at 6–8 (citing 246 F.3d 391, 407 (5th Cir. 2001) (en banc)); *see also* [147] at 17–18.

14

(Miss. 1937); *see also, e.g.*, *Pence v. United States*, 316 U.S. 332, 339 (1942) (presuming intent to defraud from knowledge of falsity).

Given the evidence discussed in the preceding section, there is a genuine issue of material fact as to Signature's fraudulent intent. *See supra* pages 12–14. The Court therefore turns to the next disputed issue: reasonable reliance.

<u>Reasonable Reliance</u>

As discussed above, reasonable reliance is a jury question. *See supra* pages 5–8. The Court turns to the final disputed element: proximate causation.

<u>Proximate Causation</u>

As discussed above, proximate causation is a jury question. *See supra* pages 8–10.

\*   \*   \*

Each disputed element presents a jury question. The Court therefore denies Signature's motion for summary judgment on fraudulent misrepresentation.

2. Delta's Motion

The Court also denies Delta's motion as to fraudulent misrepresentation. Considering the (almost identical) record evidence underlying that motion, the Court finds that each disputed element presents a jury question. *See* [146]; [156]; [158]. Neither side is entitled to summary judgment on fraudulent misrepresentation.

D. Punitive Damages

Finally, Delta moves for summary judgment as to its punitive-damages claim. [146] at 3. But "compensatory damages are a prerequisite to addressing punitive damages," and Delta has not established compensatory damages. [147] at 21 (citing Miss. Code Ann. § 11-1-65(1)(b)). So the Court denies Delta's motion for summary judgment on punitive damages.

IV. Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court DENIES Cross-Claimant Delta Industries, Inc.'s and Cross-Defendant Signature Insurance Agency, LLC's [146] and [148] Motions for Summary Judgment.

SO ORDERED, this 23rd day of June, 2024.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE